We have five cases on the calendar this morning, two related patent cases, a case from the Board of Contract Appeals, a government employee case, and the last which has been submitted on the briefs is jointly from District Court and the Court of Federal Claims. The first case is somewhat misnamed since it's the first case, not the ultimate, is UltimatePointer v. Nintendo, 2015, 1297, Mr. Rogers. Okay, please report. My name is Charles Rogers from the law firm of Conley Rose, and I have here with me today my colleague Tom Worden from the Conley Rose law firm. Have you propounded a construction for image sensor anywhere? Yes. Something at page 53, is that it? I'm not sure about the page number, but from my notes we have ordinary meaning, and we propose the ordinary meaning as a sensing device able to capture an image, and the site to that in the joint appendix is 98. Why is it the handheld device, pointing device, or direct pointing device? The reason why is, you know, there's a question as to whether or not this, I mean, we know where direct pointing comes from. It comes from the specification. It's imported from the specification into the claims. So it's really a question of whether this is improper importing of limitations from the specification, or just a proper reading of the claims in light of the specification. And the claim construction rules that we use to determine which side of the line it is, is lexicography, when a claim term is explicitly defined in the spec, and disavow or disclaimer. And this is not a situation of lexicography because handheld device. That's not correct. I mean, under Phillips, specification is always relevant, and you look to the specification to see whether it implicitly defines the term. And there's a pretty good argument here that the specification suggests that direct pointing is the way to go, and that indirect is disfavored. Well, the argument from Nintendo is not lexicography because handheld device is not defined. It doesn't have to be lexicography. I understand. It's a disavow argument. It's a disclaimer. It doesn't have to be either one of those. It doesn't have to be either one of those under Phillips. It can be, you look to the specification under all circumstances to see what the term means. And you look at the specification here, and there's an implicit definition of the term by favoring direct pointing. And how I would characterize that is like the court did, the district court, is the gist of the invention or the invention as a whole. And the way I look at it is you look to where it came from, and you look in the spec. There is discussions of direct pointing, indirect pointing, and mixed direct and indirect. They're put into categories. Indirect is described as less natural, less accurate, and slower in the past, in 729. It's criticized, like you said, and so is direct pointing criticized. And so what we should do is look to specifically what the criticism is of the indirect pointing. Is it indirect pointing itself, or is it a particular aspect of indirect pointing? And what you're referring to is at column 2 of the patent, lines 33 to 37, and where it says that direct pointing is less natural to the human operators of such systems, you look at the preceding sentence. It gives some reasons, and it says, and hints, less natural to the human operators of such systems. Well, what's the reason? Why is it less natural? And what it says, starting at line 33, it says, and this is criticism of the group of prior patents that are classified as indirect pointing. And the criticism is that there is no information on the actual position or presentation display with respect to the system, causing the resulting pointing action to be inherently indirect and hence less natural. And so you look at that criticism and you say, does that result in us reading the claims to require direct pointing? And the answer is no. What it requires is that you read the claims to have this requirement, to have information on the actual position of the presentation display. And that's in the claims, not at the handheld device. It's in the claims. For example, claim 5 is one example where in the preamble it says, the calibration points are provided in a predetermined relationship to the image. So this criticism of indirect pointing makes its way into the claims, not where the handheld device is. So that's why direct pointing shouldn't be read into the handheld device. And we have enough requirements in the claim to coincide with this criticism of indirect pointing. That's how the inventor handled it. The inventor classified objects into prior art, into direct pointing, indirect pointing, and mix. And they knew what those claims were. They specifically defined them. And there's a reason they didn't use those claims then in the claims, specifically didn't use them. So you shouldn't read those in, especially when you have not only direct pointing and indirect pointing. You have mix. So there's this gray area, mixed, direct, and indirect. And then you have the issue of once you define something as direct pointing, how direct does it have to be? If we don't agree with you on that, and there's judgment of non-infringement because the experience doesn't use direct pointing, then do the other claim constructions matter? The image sensor claim construction matters. Non-infringement is non-infringement. Well, I'm sorry. I misunderstood you. I thought you meant to say if you read direct pointing into the claims, don't reverse that claim construction. There's still a question of whether or not the device infringes under that interpretation. So, of course, if you find that there's no infringement, if you find that the claim construction requires direct pointing, and that there's no infringement because of that, then no, you don't reach the other issues. But our position is, and so let's go with the assumption that the claim construction is not corrected to remove direct pointing. Let's say you find that direct pointing is required in the claims. Then the question is, what's direct pointing? And even if direct pointing is required, there's still infringement because the Wii remote is still a direct pointing device. If you look at… It's directly pointing at something else. When a user uses the Wii remote, they point at the screen. They point at the object on the screen that they're trying to control. One might say you have direct pointing. I'm sorry? One might say that you are just direct pointing. And I was pointing in between judges, not to be rude to point directly at a person. But yes, that is direct pointing. And these motions that I'm using is what my children do when they play the Wii. They point at the screen. They point at what they're trying to control on the screen, and that's direct pointing. If you look at the district court's summary judgment ruling, there is enough fact findings in there. In the summary judgment order where they find no infringement, there's enough fact findings in there to find that there is infringement. If you look at the court's ruling, Washington's court's ruling, it's 837 in the Joint Appendix. The court starts out by describing the configuration of the Wii system when it's configured according to the instructions, according to the user manuals, where you put the sensor bar directly above or below the TV screen, and you tell the Wii system, the user tells the system, where the sensor bar is located. So you know there's this direct relationship between the display and the sensor bar and the calibration points. And it says, the court says, if the sensor bar is placed directly above or below the screen as directed in the operations manual, the remote will pick up the LED lights when it is aimed at the screen and the approximate intersection of the physical point of aim with the screen, giving the user the impression of direct pointing. That's direct pointing. But then there's a criticism. It says, but the Wii does not collect or generate the data that would be necessary to accurately place the cursor on the screen. So what the court is saying is, well, you have direct pointing, but it's not close enough. Is it direct pointing if the sensor bar is off to one side? If the sensor bar is off to one side, what you're doing is you're taking the accused device and you're configuring it in a manner that is contrary to the instructions. Does it work? Does it work if you put it to the side? It uses triangulation, right? You're changing the relationship of the calibration points contrary to the user manual, to the way the device is intended to be constructed. So it's really not a relevant issue in the case. Because the device operates by using the direct relationship between the calibration points and the display, if you change that relationship, it changes how it works. But for a district court to give enough findings to find infringement and to say, well, if we configure the product contrary to the way it's supposed to be used, contrary to the way the manufacturer tells it to be used, and therefore it doesn't infringe, first of all, that's not the way the analysis should be done in the first place. But just because it infringes when you configure it in one manner doesn't mean that it never infringes. It still infringes in the manner that it's designed to be constructed. You're into your rebuttal time, Mr. Rogers. You can continue or you can save it. The only thing I wanted to point out was that if you take a look at what issues are remaining in the case, I wanted to make sure that you understood that if you do go through the direct pointing in the image sensor and correct them or at least find that there's genuine issues of material fact, even under the claim constructions, that the other claim construction issue is data of the calibration points. That's briefed at pages 39 through 42 of our case. Of our 321 patent, right? Data of the calibration points actually is in the 729 patent as well. That's why I wanted to point it out, that it's still an issue in the case. But you've dismissed the claims on the 321. On the 321. But this data of the calibration points is in the 729 patent as well. And it would be an important issue. If there is a remand, it would be an important issue. And we ask that you exercise your discretion to correct that claim construction as well. And I'll reserve the rest of my time for a vote. We're going to do that for you, Mr. Rogers. Mr. Ridinger is it? Yes, sir. Thank you, Your Honor. And on the point that Mr. Rogers was just talking about, the suggestion that there were genuine issues. Are those direct points or indirect points? We think there's no direct point here. We need your authority, not your point. But we don't believe that there are genuine issues of material fact. And it's important to recognize that the description of the operation of the Wii system that's contained in the summary judgment order was not contested by Altman Poynter in their briefs. They did not identify anything said by the district court describing the operation of the Wii that they say is erroneous. And so there just isn't anything that the district court based the summary judgment on that would create a genuine issue of material fact. And on the definition of direct pointing, we believe that there's both an implicit definition of handheld device and handheld pointing device to include direct pointing and definition by disavowal, disavowal by disparagement. There's no purpose to the invention of this patent other than direct pointing. It is the entire reason for its existence. Without direct pointing, there's just nothing that one would do with the invention of this patent. And then, of course, if you look at the specification, direct pointing permeates the specification. It's in the title. It's in the summary. It's in every embodiment. It's in all of the figures. And then, of course, if you look at what's described in the prior art discussion, there is complete and thorough disparagement of embodiments of any kind of prior art that does not include direct pointing. There's also disparagement of the kind of features that are contained in the Wii system. So if you look at, really, column two, Linux 301, there's a description of prior art pointing devices that show indirect pointing. And within that description, there are lots of different things, but one of the things that's described as indirect pointing that doesn't have the advantages of the invention is the Wii system. The specification talks about patents showing pointing devices that are measured with respect to some coordinate system. That's line 26 in column two. And then it talks about coordinate systems that have several different approaches, including infrared devices. And that's how the Wii system works. There are invisible infrared lights in this sensor bar. It's the bar that's sensed by the Wii remote. And so that's the kind of coordinate system that the prior art discussion is talking about. And then the specification says that those coordinate systems may be positioned close to the display. So the sensor bar can be above or below. And when it's below, it can be a range of distances. If the screen is here, it can be here or someplace in front of it. But it's positioned relatively close. And then the specification describes all of those prior art items, including the Wii system, as inherently indirect. It doesn't call out the Wii system by name, but it certainly describes exactly the kind of system. And so we think that there are all the reasons why you should pay attention to the specification and say that this is an indirect pointing system that is not covered by the claims. We think that Judge Davis's interpretation of the meaning of direct pointing is correct. And we don't think that there is anything that is undisputed about the operation of the Wii system. That there is anything that is disputed. There's nothing that's disputed about the operation of the Wii system that would give rise to a genuine issue of material fact. And on top of that, we believe that you can find and agree that there's no infringement merely by looking at the image. Looking at what is the image sensed by the image sensor. And the reason for that is that Ultimate Pointer wants to interpret the claims in such a way that the image sensed is one that the Wii system simply cannot sense. It's one that is a different image from the image that's referred to throughout the claims. Now there's no dispute, Ultimate Pointer hasn't disputed, that the Wii remote is incapable of sensing the computer generated image. It's got this infrared filter in the front so that the sensor inside the Wii remote is completely incapable of sensing visual light, which is what's in the computer generated image. And then you look at every claim that's asserted in the 729 patent. And they are claims that are either method claims or apparatus claims. The apparatus claims are an apparatus for controlling a feature on a computer generated image. And the method claims are a method for controlling a feature on a computer generated image. And the rest of the claim talks about the image. In some instances, the image is expressly the computer generated image. In some instances, it's said image. But Ultimate Pointer wants to say that a system that can't see the computer generated image and can't gather data regarding that computer generated image is nevertheless a system that has an image sensor within the terms of this patent. And that's just not a reasonable reading of the claims of this patent. It's something that we believe that Judge Lasnik in the Western District of Washington properly recognized. So for all of those reasons, we think that there is just simply no infringement, no direct pointing, no image that is properly sensed by the image sensor. And you don't have to reach any other claim construction issues. Would you like me to address any other points? If you have another point to raise, no one ever gets penalized by giving up his time. No, Your Honor. If there are no other points, I believe that non-infringement would resolve the issues. Thank you. What does that – wait. What do you mean by that? Does that mean that – Well, it would resolve the infringement issues, Your Honor. But there's the indefiniteness. Yes, there is the indefiniteness, the IPXL issue. And I'd be happy to address that. We believe that Judge Lasnik was completely correct in his interpretation of the claims as mixing both a method claim, a method step, into an apparatus claim. And he did that by following some pretty good precedent from this court, the Rembrandt case, which had a very similar kind of language, transmitting frames. And in the Rembrandt case, this court agreed that if there was that kind of language, a requirement of an action, transmitting frames, in an apparatus claim, then it's indefinite under IPXL. Here we had a generating data step. Now, there's a tiny difference between the Rembrandt case – But that's not generating as a method. This is an apparatus claim. Yes, Your Honor. It is an apparatus claim. Isn't the microprocessor enhancement case relevant here? Well, it is relevant, but it provides a distinction. Now, the microprocessor enhancement case said that if it's clear that the action step is merely a capability of performing the action, then it's not an IPXL problem. There is no indefiniteness. There is no explanation in microprocessor enhancement for – Why isn't that true here? Well, Your Honor, because we believe that the microprocessor enhancement case was based on the fact that it was a means plus function clause, that they were section 112 paragraph F clauses, and the – I don't think microprocessor says that. I mean – There is no explanation in the language of the case, Your Honor, for why it's clearly a – Well, it says it's a capability. It says it's clearly a capability. You're right. And there's no explanation. We think the reason, most likely, is because it's a means plus function clause, and so it's a further limitation on a means plus function clause. That's a hard read of the microprocessor case. Well, Your Honor, it's the way that I can reconcile microprocessor enhancement with Rembrandt. It's the way that I can reconcile microprocessor enhancement with Rembrandt, and I think the two cases should be reconciled, and that's the best way to do it. I mean, the language in Rembrandt very closely matches the language here. If we say that microprocessor enhancement goes in the opposite direction, then I guess it would be up to this Court to resolve that difference. But the two cases can be reconciled by the fact that microprocessor enhancement was a means plus function clause. And here there is obviously no means plus function clause. There's no for kind of language. There's no capability kind of language. So we think the district court was correct. Thank you, Mr. Roediger. Thank you, Your Honor. Mr. Rogers has two and a half minutes for rebuttal time. Yes. Two points I want to discuss briefly, the image sensed and the IPXL. The arguments I'm hearing are related to the court's finding that the image sensor, the image in it does not include the LED lights from the Wii sensor bar. And to look to see whether or not that's the case, you look in the claims and the specification and look at the purpose of the image sensor. And in the claims, claim five is an example. It talks about the purpose of the image sensor to be generating data, the calibration points. So it is talking about points, points of light, like an LED from the Wii sensor bar. And then another example in the specification is figure 18 in the corresponding description, the spec, where it talks about calibration points and light spots. So it's not just an image, like a picture of an object that you see on a screen. It also includes points of light and specifically calibration points. The IPXL issue… The calibration points are the corners of the image, are they not? They are described in the spec to be either the corner of the image or they're also described when they list through some prior art and examples of calibration points. They do include points outside the image, off to the side of the screen. And that is precisely what's done with the Wii sensor bar because, yes, they're outside the display. But the system knows the relationship, the direct relationship between the display and the sensor bar. And so there's no difference between having a calibration point that's within the screen versus having something that's adjacent to the screen. Where does the patent show that they're not related to the calibration, directly related to the image? The calibration points? The patent shows that the calibration points are directly related to the image. And that's what's recited, for example, in the preamble of Claim 5. And so that's what we have in the Wii, where you have the sensor bar above or below, directly adjacent to the display. And the computer, the console, knows the relationship. And so it's the same thing as having a calibration point on the screen itself, on the display, versus adjacent to it when you know what the relationship is. Before you sit down, just a comment on your confidentiality markings, which seem to me to be quite improper. You are marking as confidential in your public user manuals for the Wii. I cannot understand how that could possibly be confidential. I agree. These were designations made by the Nintendo. Okay. Thank you. Mr. Rogers, we'll take the case on advisement.